UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------- x

STANLEY WOJCIK,    :
    :
                    Plaintiff,    :                    02 Civ. 7019 (CSH)
    :
        -against-    :            MEMORANDUM OPINION
    :                     AND ORDER
42ND STREET DEVELOPMENT    :
PROJECT, INC. and TURNER    :
CONSTRUCTION CO.,    :
    :
                    Defendants.    :
---------------------------------------------------- x

Haight, Senior District Judge:

      This diversity case removed from a state court is now before this Court on the motion of

defendants 42nd Street Development Project, Inc. and Turner Construction Co., ("defendants")[1]

for summary judgment on plaintiff Stanley Wojcik's[2] claims based upon New York Labor Law

§§ 240(1), 241(6), 200, and common law negligence.[3]  For the reasons explained herein, I deny

defendants' motion as to plaintiff's Labor Law § 240(1) and § 240(6) claims, but grant their

motion as to plaintiff's Labor Law § 200 and common law negligence claims.

---

[1] Both defendant corporations are alleged to be "citizens" of the State of New York as that term is defined in 28 U.S.C. § 1332(c)(1).  Defendants are both incorporated in New York State and maintain their principal places of business in New York, New York.  Notice of Removal, ¶¶ 1-2.

[2] Plaintiff Stanley Wojcik is alleged to be domiciled in, and hence a citizen of, the State of New Jersey.  *Chapelle v. Beacon Communications Corp.*, 863 F.Supp. 179 (S.D.N.Y. 1994).  Plaintiff seeks judgment for $20 million.  Hence, because the citizenship of the plaintiff is diverse from that of all defendants, and the amount in controversy exceeds $75,000, I conclude, at least preliminarily, that this Court has subject matter jurisdiction over the above-captioned case pursuant to 28 U.S.C. § 1332.

[3] Plaintiff invites this Court to exercise its authority to enter judgment for plaintiff *sua sponte*.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (district courts "are widely acknowledged to possess the power to enter summary judgments *sua sponte*"); *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996) ("Where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law.").  Because in the case at bar there are genuine issues of material fact, I decline plaintiff's invitation.

# I. Preliminary

Before I proceed to a recitation of the circumstances underlying this action, I address a preliminary issue. Plaintiff, represented by counsel, has wholly failed to submit a statement complying with Local Rule 56.1 statement. The consequences of that failure must be considered.

District courts have the discretion to adopt local rules which they deem necessary to carry out the conduct of their business. *Frazier v. Heebe,* 482 U.S. 641, 645 (1987) (citing 28 U.S.C. §§ 1654, 2071; Fed. R. Civ. Pro. 83). Pursuant to Local Civil Rule 56.1(a) adopted in this District, a motion for summary judgment must have annexed to it a short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no issue to be tried. Local Civil Rule 56.1(a). Here, defendants, as the moving party, included such a statement with their motion for summary judgment. Defendants' statement contains eighty-two separate paragraphs with citations to the record.

In addition, Rule 56.1(b) imposes a parallel mandate on the party opposing summary judgment. "The papers opposing a motion for summary judgment *shall* include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." Local Civil Rule 56.1(b) (emphasis added). Counsel[1] for plaintiff has filed an affidavit in opposition (the "Sacks Affidavit") which contains a desultory assortment of factual allegations. But these allegations – contained in thirty-three numbered paragraphs –

---

[1] *Cf. Olle v. Columbia University*, 332 F.Supp.2d 599, 603 (S.D.N.Y. 2004); *McAllister v. New York City Police Dept.,* 49 F.Supp.2d 688, 693 n. 2 (S.D.N.Y.1999) (noting that, despite the failings of the *pro se* plaintiff's purported Local Civil Rule 56.1 statement, "it is well settled that a *pro se'* s papers are to be read liberally."); *Burke v. Royal Ins. Co.,* 39 F.Supp.2d 251, 257 (E.D.N.Y.1999) (construing the merits of a defendant's motion for summary judgment against a *pro se* plaintiff "in light of the entire record before the Court," despite plaintiff's failure to submit a Local Civil Rule 56.1 statement "or to present factual material in evidentiary form"). Since plintiff at bar is represented by counsel, this principle of lenity does not apply.

merely recite the asserted facts underlying plaintiff's case. Counsel for plaintiff has not

submitted the statement in opposition required by Rule 56.1(b). In that circumstance, Local Rule

56.1(c) provides as follows:

> Each numbered paragraph in the statement of material facts set forth in the
> statement required to be served by the moving party *will* be deemed to be
> admitted for purposes of the motion unless specifically controverted by a
> correspondingly numbered paragraph in the statement required to be served by
> the opposing party.

Local Civil Rule 56.1(c) (emphasis added); *Giannullo v. City of New York*, 322 F.3d 139, 140
(2d Cir. 2003). ("If the opposing party then fails to controvert a fact so set forth in the moving
party's Rule 56.1 statement, that fact will be deemed admitted."); *Gubitosi v. Kapica*, 154 F.3d
30, 31 (2d Cir. 1998) (same).

However, "[t]he local rule does not absolve the party seeking summary judgment of the
burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1(a)
statement is not itself a vehicle for making factual assertions that are otherwise unsupported in
the record." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 74 (2d Cir. 2001). Further, Rule
56.1(b) allows the opposing party to "include . . . additional paragraphs containing a separate
short and concise statement of additional material facts as to which it is contended that there
exists a genuine fact to be tried." Local Civil Rule 56.1(b). As described above, the Sacks
Affidavit does contain various factual allegations, many of which expressly dispute the
allegations in defendants' 56.1 Statement. Although neither short nor concise, insofar as
plaintiff's allegations contained in the affidavit are properly supported by citations to the record,
I will consider the Sacks Affidavit as proffering additional material facts as to which plaintiff
contends that there exists a genuine fact to be tried.

Based upon the foregoing, and for the purpose of adjudicating defendants' motion for
summary judgment, I will be guided by two principles. First, any fact alleged in defendants'
Rule 56.1 statement, supported in fact by the record, and not specifically and expressly
contradicted by properly supported allegations in the Sacks Affidavit, will be deemed admitted
by plaintiff. Second, any fact alleged in defendants' Rule 56.1 statement, supported in fact by
the record, but which is specifically and expressly controverted by facts contained in the Sacks
Affidavit which are supported in the record, will not be deemed admitted by plaintiff.[5]

## II. Background

This action is the result of a construction accident which occurred on June 28, 2002 at the
Times Square Tower Project at Seven Times Square in New York (the "project"), a property in
which defendant 42nd Street Development Project, Inc. ("42nd St. Development") has an
ownership interest. Defendants' 56.1 Statement, ¶¶ 1-3. Plaintiff was an ironworker employed

---

[5] In addition, factual allegations contained in defendants' Rule 56.1 statement but not supported by citations to
admissible evidence in the record will not be deemed admitted by plaintiff's failure to submit its Rule 56.1 statement
in opposition. Local Civil Rule 56.1(d). Further, where defendants assert legal conclusions in the guise of an undisputed
statement of fact, *see, e.g.,* Rule 56.1 Statement, ¶ 82, I shall not consider those legal conclusions admitted by plaintiff.

by Canron Construction Corp. ("Canron"), a subcontractor of defendant Turner Construction Co. ("Turner"), which was hired to provide steel erection services to the project. *Id.* at ¶ 6.

Plaintiff began working at the project site in April 2002 and was part of a detail gang which assisted in a variety of different construction tasks. Wojcik Aff., pp. 25-26 *in* Sparling Aff., Ex. C. The foreman of plaintiff's detail gang was Canron employee Michael O'Donnell. Defendants' 56.1 Statement, ¶ 39. According to the plaintiff, on the morning of the accident he was initially working in a subbasement at ground level when he was instructed by O'Donnell to move to a higher level to remove part of the Q-deck floor – a form of temporary flooring – in order to create a hole through which elevator motors could be lowered. Sacks Aff., ¶ 5; Defendants' 56.1 Statement, ¶ 43. While removing the Q-deck, plaintiff fell approximately thirteen feet through the hole in the floor which he had created, onto the concrete floor below, injuring himself. Sparling Aff., Ex. AA; Defendants' 56.1 Statement, ¶ 64; Wojcik Aff., p. 70 *in* Sparling Aff., Ex. C.

Plaintiff contends that his request, prior to his fall, that scaffolding be erected under his new work site was denied by O'Donnell. Sacks Aff., ¶ 5. Moreover, he claims that the working conditions on C-1 were openly dangerous: to wit, the decking was wet and strewn with debris and the lighting was poor. Sacks Aff., Ex. C., pp. 34-37; Sacks Aff., ¶¶ 5-7. Plaintiff asserts that he was not provided with a safety harness, referred to as a "Personal Fall Arrest System" or "PFAS," and that no PFAS was available to him in Canron's "gang box" which contained the equipment. Sacks Aff., ¶ 5. Moreover, plaintiff claims that because no safety lines were erected in the area of his fall, even if he had been given a PFAS, he would not have had any place to tie-off.[6] Wojcik Aff., ¶ 10 *in* Sacks Aff., Ex. A.

Defendants respond that "Canron provided every ironworker at the Seven Times Square Tower Project with a PFAS," as well as instructions on how to use the PFAS, and weekly reminders to use it. Defendant's 56.1 Statement, ¶¶ 17, 24. In fact, according to defendants, plaintiff received exactly such a reminder less than one hour before his accident. *Id.* at ¶ 38. Defendants further contend that the accident and eyewitness reports demonstrate that when plaintiff fell, he was actually wearing the PFAS, though he had not "tied off to an adequate anchorage point," *Id.* at ¶ 77 (quoting Scuola Aff., ¶ 7), despite the presence of two such points which were readily available to him. *Id.* at ¶¶ 56-61.

On July 24, 2002, plaintiff commenced this action in the Supreme Court of New York, New York County. Plaintiff's complaint alleges violations of New York Labor Law §§ 200, 240(1), 241(6) (and concomitant Industrial Code violations), common law negligence, and violation of Occupational Safety and Health Administration (OSHA) standards, and requests damages in the amount of $20 million. The case was removed by the defendants to this Court on September 4, 2002.[7] Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

[6] Obviously, a safety harness is of little value unless it is attached to an immobile object. To "tie off" refers to the act of anchoring the harness (which is strapped to the body) in order to protect against a fall from heights.

[7] Because service of the complaint upon defendants was complete on August 9, 2002, the notice of removal was timely; it was filed within thirty days of receipt of the complaint. 28 U.S.C. § 1446(b).

Defendants claim that they are entitled to summary judgment on plaintiff's Labor Law § 240(1) claim on two grounds: (i) plaintiff's conduct was the sole proximate cause of his injuries, and (ii) plaintiff was a "recalcitrant worker" as that term is defined by the New York courts. Defendants claim that they are entitled to summary judgment on plaintiff's Labor Law § 241(6) claim because plaintiff's cannot allege any violation of the New York Industrial Code. Finally, defendants claim that they are entitled to summary judgment on plaintiff's Labor Law § 200 and common law negligence claims on three grounds: (i) defendants did not supervise or control plaintiff's work; (ii) defendants did not have notice of the alleged unsafe condition; and (iii) the hole in the flooring was an open and obvious condition, created by the plaintiff himself.

For the reasons that follow, I deny defendants' summary judgment motion in part and grant it in part.

## III.  Discussion

<u>A.  Standard of Review on Motion for Summary Judgment Pursuant to Rule 56</u>

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law."  *Rodriguez v. City of New York,* 72 F.3d 1051, 1060-61 (2d Cir. 1995).  The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  In the case at bar, the parties agree that New York law governs.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Matsushita Elec. Indus. Co. v.. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party, summary judgment is improper."  *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d. Cir. 1994).

B.  Plaintiff's Labor Law § 240(1) Claim

For 120 years Labor Law § 240(1) – commonly known as the scaffold law – has provided legal recourse to workers injured while engaging in construction at heights.  *Blake v. Neighborhood Hous. Servs. of N.Y. City, Inc.,* 1 N.Y.3d 280, 284-85 (2003).  Section §240(1) states, in relevant part:

> All contractors and owners and their agents . . . in the erection . . . repairing, [or] altering . . . of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Labor Law §240(1) (McKinney 2002).  In order to prevail under § 240(1), an injured plaintiff must prove (1) that a violation of the statute, (2) is the proximate cause of his injury.  *Id.* at 287; *Davidson v. Ambrozewicz*, 785 N.Y.S.2d 149 (3rd Dep't 2004); *Meade v. Rock-McGraw, Inc.*, 307 A.D.2d 156, 159 (1st Dep't 2003).  Once a plaintiff makes these two showings, the defendant is subject to absolute liability.  *Koenig v. Patrick Contr. Corp.*, 298 N.Y. 313, 316-317 (1948).

In order to demonstrate a violation of the statute, plaintiff must prove that he was not provided proper protection in the form of scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, or other devices.  Section 240 (1) "is to be construed as liberally as may be for the accomplishment of the purpose for which it was framed, however, this principle operates to impose absolute liability only *after* a violation of the statute has been established."  *Narducci v. Manhasset Bay Associates*, 96 N.Y.2d 259, 267 (2001) (internal citations and quotations omitted).

> At no time, however, did the Court or the Legislature ever suggest that a defendant should be treated as an insurer after having furnished a safe workplace.  The point of Labor Law § 240(1) is to compel contractors and owners to comply with the law, not to penalize them when they have done so.

*Blake*, 1 N.Y.3d at 286.  Once an injured plaintiff proves a violation of § 240(1), he must then demonstrate that the statutory violation proximately caused his injury.  "Violation of the statute alone is not enough; plaintiff [is] obligated to show that the violation was a contributing cause of

---

8 "Absolute liability" may lead to the misimpression that § 240(1) is a strict liability statute, or a statute that creates liability without fault.  That is not so.  *Blake*, 1 N.Y.3d at 287-88.  Section 240(1) is said to be absolute in two ways.  First, liability under § 240(1) is "absolute" insofar as a plaintiff who demonstrates that a violation of the statute was the proximate cause of his injury, cannot have his recovery reduced by a claim that the plaintiff was also partially responsible for the injury.  *Bland v. Manocherian*, 66 N.Y.2d 452, 460 (1985) (where defendants failed to satisfy the requirements imposed by § 240(1), then "regardless of any carelessness on plaintiff's part which might have contributed to his fall, defendants were properly held absolutely liable for the full extent of the damages proximately caused by the improper placement of the ladder.").  Section 240(1) liability is also said to be absolute because the duty it imposes is nondelegable.  Because the statute refers to "[a]ll contractors and owners and their agents," a defendant, such as a property owner, will be held liable regardless of whether he exercises any supervision or control over plaintiff's work.  *Ross*, 81 N.Y.2d at 500.  The scaffold law was designed to "impose the responsibility for safety practices on those best situated to bear that responsibility."  *Ross v. Curtis Hydro Electric Company et al.,* 81 N.Y.2d 494, 500 (1993).

his fall." *Duda v. John W. Rouse Const. Corp*,. 32 N.Y.2d 405, 410 (1973); *see also Ross v. Curtis Hydro Electric Company et al.,* 81 N.Y.2d 494, 501 (1993). ("Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person.*") (emphasis in original).

In *Smith v. Hooker Chems. & Plastic Corp.* – a case which the Court of Appeals of New York has repeatedly and expressly cited with approval – the First Department elucidated what has come to be known as the "recalcitrant worker" defense. 89 A.D.2d 361, 365-66 (1st Dep't 1982).⁹ "While the Legislature has sensibly acted to protect workers from a failure by owners or contractors to supply equipment or for supplying faulty equipment, the statutory protection does not extend to workers who have adequate and safe equipment available to them but refuse to use it." *Id.* at 366 (emphasis added).¹¹ An owner or contractor who has provided appropriate safety devices to workers and properly instructed workers in their use will not be held liable for failing to "insist that a recalcitrant worker use the devices." *Id.* at 365. Furthermore, a defendant need not show that plaintiff disregarded *immediate* instruction to use a safety harness. The Court of Appeals has held that instructions to the plaintiff to use the safety device given weeks before the accident were a sufficient basis for defendant's recalcitrant worker defense. *Cahill v. Triborough Bridge and Tunnel Authority*, 4 N.Y.3d 35, 39 (2004).

In order to prevail on their motion for summary judgment on plaintiff's Labor Law § 240(1) claim, defendants must demonstrate that there is no genuine issue of material fact that (i) there was no violation of the statute because plaintiff was provided with appropriate safety devices and properly instructed in their use, or (ii) that any violation which occurred did not proximately cause plaintiff's injury. Because there is a genuine issue of material fact as to whether defendants violated § 240(1) – that is to say, whether defendants provided plaintiff with

---

⁹ By comparing the language in § 240(1) to the language in other sections of the Labor Law, the *Smith* court concluded that, because the New York Legislature did not include in § 240(1) language which placed an absolute duty of supervising the correct use of safety equipment upon owners and contractors, the Legislature did not intend for owners and contractors to be liable for the injuries of workers who refuse to use safety devices provided to them. *Id.* at 365.

¹⁰ The "recalcitrant worker" defense is often described as "exemplify[ing]" the proximate cause rule. *See, e.g., Cahill v. Triborough Bridge and Tunnel Authority*, 4 N.Y.3d 35, 39 (2004). However, I believe this description is misguided. The recalcitrant worker defense is merely an alternative description of the failure of a plaintiff to demonstrate that a violation of § 240(1) proximately caused his injury. The recalcitrant worker has, by definition, been provided with adequate and safe equipment to complete his task. In other words, there is *no violation* of § 240(1). Despite being properly instructed on the use of the protective equipment, which is readily available to her, she obstinately (or recalcitrantly) refuses to use that equipment. As discussed in the accompanying text, a plaintiff cannot recover damages under §240(1) without first proving a violation of the statute. *Narducci*, 96 N.Y.2d at 267.

a PFAS and an appropriate tie-off point – I deny their motion for summary judgment on plaintiff's Labor Law § 240(1) claim.

Defendant asserts that all ironworkers employed by Canron, including plaintiff, were provided with a brand new PFAS. Defendants' Rule 56.1 Statement, ¶¶ 17-18; Kraham Aff., p.22 *in* Sparling Aff., Ex. E ("Q. Did Stan Wojcik get fall protection on this job site? A. Fall protection equipment? Q. Equipment? A. Yes, everybody did."). In fact, defendants present evidence that at the time of his fall, plaintiff was actually wearing a safety harness, albeit one that was not tied-off. Defendants' Rule 56.1 Statement, ¶¶ 56-61, 77. Defendants further claim that plaintiff had multiple appropriate tie-off points. "Plaintiff had two readily available, convenient nearby locations to tie-off . . . [t]here was an elevator column and safety fence post installed by Canron in the immediate vicinity of Plaintiff's work location." Defendants' Rule 56.1 Statement, ¶¶ 56-57. However, plaintiff also presents evidence – in the form of an affidavit by the plaintiff, and deposition testimony by plaintiff's co-worker, Basil Nicholson, and his foreman, Michael O'Donnell. These deponents testified that a PFAS was not provided to plaintiff and none were contained in the Canron gang boxes on the morning of the accident. Sacks Aff., ¶¶ 6-8; Wojcik Aff., ¶¶ 5, 8, 10 *in* Sacks Aff., Ex. A; Nicholson Deposition, pp. 75-80, 83-84 *in* Sacks Aff., Ex. B; O'Donnell Deposition, pp. 81-83 *in* Sacks Aff., Ex. D. Moreover, plaintiff alleges, and defendant does not dispute, that no safety lines had been erected in the vicinity of plaintiff's accident. Sacks Aff., ¶¶ 5, 6, 8; Plaintiff's Aff., ¶¶ 6, 10 *in* Sacks Aff., Ex. A. In addition, plaintiff disputes defendants' assertion that the elevator column or safety fence post were proper tie-off points, claiming that "in my career as an ironworker I have never been instructed to tie off to an elevator post or a barricade." Wojcik Aff., ¶ 10 *in* Sacks Aff., Ex. A; *see also* Kraham Aff., pp. 105-06 *in* Sacks Aff., Ex. D (same); O'Donnell Aff., pp.

59-61 *in* Sacks Aff., Ex. C. (same).   In fact, plaintiff claims that the safety fence post was not

present on the morning of his fall, and was actually installed after the accident.   Sacks Aff., ¶ 16.

Because the issues of whether defendants properly furnished a PFAS and, since there
were no safety lines in place, whether the two purported tie-off points were proper, are genuine
issues of material fact, I deny defendants motion for summary judgment on plaintiff's Labor
Law § 240(1) claim.[11]

## C.  Plaintiff's Labor Law § 241(6) Claim

Section 241(6) of the Labor Law empowers the Commissioner of the Department of

Labor to promulgate regulations to promote the safety of workers engaged in construction,

excavation and demolition, and provides that the violation of certain of those regulations by an

owner or contractor constitutes a breach of § 241(6).   *Ross,* 81 N.Y.2d at 501-02.   The law

provides in pertinent part:

> All areas in which construction, excavation or demolition work is being
> performed shall be so constructed, shored, equipped, guarded, arranged, operated
> and conducted as to provide reasonable and adequate protection and safety to the
> persons employed therein . . . .   The commissioner may make rules to carry into
> effect the provisions of this subdivision, and the owners and contractors and their
> agents  . . . shall comply therewith.

N.Y. Labor Law §241(6) (McKinney 2002).   Section 241(6) was written "to place the

'ultimate responsibility for safety practices at building construction jobs where such

responsibility actually belongs, on the owner and general contractor.'"   *Rizzuto v. L.A. Wenger*

*Contracting Co., Inc.*, 91 N.Y.2d 343, 348 (1998) (quoting 1969 N.Y. Legis. Ann., 407-08).

Thus, like § 240(1), § 241(6) is nondelegable, so a plaintiff "need not show that defendants

---

[11] Because I find that there is a genuine issue of material fact as to whether defendants violated § 240(1), neither of the
bases for defendants' motion – that plaintiff's conduct  was the sole proximate cause of his accident and plaintiff was
a recalcitrant worker – are sufficient to support their motion.   *See supra* n.10 and accompanying text.

exercised supervision or control over his worksite in order to establish his right of recovery." *Ross,* 81 N.Y.2d at 502; *see supra* n.8.[11]

But not all violations of regulations are actionable under § 241(6). "[A] distinction must be drawn between provisions of the Industrial Code mandating compliance with concrete specifications and those that establish general safety standards by invoking . . . general descriptive terms . . . . The former give rise to a nondelegable duty, while the latter do not." *Ross,* 81 N.Y.2d at 505. Hence, only the violation of those provisions of the Industrial Code which mandate compliance with concrete specifications can form the basis of a § 241(6) action. *Compare* 12 NYCRR § 23-1.7(b)(1)(i) ("Every hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place or by a safety railing constructed and installed in compliance with this Part (rule).") *with* 12 NYCRR § 23-1.4[a] (requiring the provision of materials and equipment "of such kind and quality as a reasonable and prudent [person] experienced in construction . . . operations would require in order to provide safe working conditions").

In the case at bar, plaintiff claims that defendant violated an assortment of provisions of Rule 23 of the Industrial Code of the State of New York, including §§ 1.7, 1.8,

---

[12] However, § 241(6) and § 240(1) differ in two material and related respects. First, a violation of § 241(6), unlike a violation of § 240(1) is only some evidence of negligence on the part of the owner or contractor. *Long v. Forest Fehlhaber*, 55 N.Y.2d 154, 161 (1982). This distinction is based upon "the principle, long and firmly established in New York, that the violation of a rule of an administrative agency . . . lacking the force and effect of a substantive legislative enactment, is 'merely some evidence which the jury may consider on the question of defendant's negligence.'" *Id.* (quoting *Teller v. Prospect Heights Hospital*, 280 N.Y. 456, 460 (1939)). Second, because absolute liability is not imposed by proof of a violation of the regulations promulgated under § 241, contributory and comparative negligence are viable defenses to § 241(6) claims. *Id.* In contrast, as discussed is the preceding Part, liability under § 240(1) is absolute, so once plaintiff demonstrates that a violation of § 240(1) is the proximate cause of his injury, no defenses can mitigate the defendant's liability.

1.15, 1.16, 1.17, 1.21, 1.32, 2.2, 2.3, 2.4, and 5. Compl., ¶ 10.[11] Because there are genuine

issues of material fact as to whether defendants violated § 1.17(d),[11] I deny defendants' motion

for summary judgment on plaintiff's § 241(6) claim.

Section 1.7(b)(1)(i) provides that "[e]very hazardous opening into which a person

may step or fall shall be guarded by a . . . a safety railing constructed and installed in compliance

with this Part." This regulation has been held sufficient to support a § 241(6) cause of action.

*See, e.g., Dorrian v. Caldor Corp.*, 152 F.3d 917 (2d Cir. 1998); *Reinoso v. Ornstein Layton*

*Management, Inc.*, 19 A.D.3d 678 (2nd Dep't 2005). Defendants do not dispute that no safety

railing had been constructed around the opening through which plaintiff fell. Defendants'

Memorandum, p. 15.

The interpretation of an Industrial Code regulation and the determination as to whether a

particular condition is within the scope of the regulation both present questions of law for the

court. *Messina*, 300 A.D.2d at 123; *see also Penta v. Related Companies, L.P.,* 286 A.D.2d 674,

675 (2d Dep't 2001); *Millard v. City of Ogdensburg,* 274 A.D.2d 953 (4th Dep't 2000). The

cases addressing § 1.7 make it abundantly clear that in the case at bar, the hole through which

---

[13] Plaintiff also purports to ground his § 241(6) claim in violations of Department of Occupational Safety and Health Agency ("OSHA") standards. Compl. ¶ 10. However, violations of OSHA standards do not provide a basis for liability under Labor Law § 241(6). *Schiulaz v. Arnell Const. Corp.*, 261 A.D.2d 247, 248 (1st Dep't 1999). Consequently, to the extent that plaintiff purports to employ OSHA standards as a predicate for his § 241(6) claim, that claim fails, because OSHA standards are not the type of regulations that establish a nondelegable duty, the breach of which would constitute some evidence of negligence.

[14] I need not reach the question of whether a genuine issue of material facts exists regarding defendants' alleged violation of other provisions of the Industrial Code. *See Rizzuto*, 91 N.Y.2d at 351 ("Because we thus conclude that at least one of the regulations cited by plaintiff is both sufficiently specific and applicable in this context, Supreme Court erred in granting summary judgment by ruling that none applied. Therefore, we need not determine, at this juncture, whether any of the remaining regulatory provisions cited by plaintiff below also apply . . . ."). As I explain in the accompanying text, the determination as to whether a particular condition is within the scope of an Industrial Code regulation presents a question for the court. *Messina v. City of New York*, 300 A.D.2d 121, 123 (1st Dep't. 2002). Therefore, it is the better course to make further rulings on whether a particular condition is within the scope of a regulation, if necessary, at trial and based upon a complete record.

plaintiff fell is a "hazardous opening" as that term is used in § 1.7(b)(1)(i). *See Ryan v. Freidman Decorating Co*., 2005 WL 1802861, at *18 (S.D.N.Y. Jul. 28, 2005) (citing *Wells v. British American Dev. Corp.,* 2 A.D.3d 1141 (3d Dep't 2003) (holding that elevator pit into which employee fell was sufficiently large to support violation of regulation); *but c.f. Rice v. Board of Ed.,* 302 A.D.2d 578 (2d Dep't 2003) (holding the regulation inapplicable where worker's leg fell into one-foot deep hole in rear of flatbed truck); *Plump v. Wyoming County,* 298 A.D.2d 886 (4th Dep't 2002) (holding the regulation inapplicable to worker's four-and-one-half-foot fall from flatbed of delivery truck at construction site); *Sopha v. Combustion Eng'g, Inc.,* 261 A.D.2d 911 (4th Dep't 1999) (holding that worker who fell while climbing through window did not fall through 'hazardous opening'); *Bennion v. Goodyear Tire & Rubber Co.,* 229 A.D.2d 1003 (4th Dep't 1996) (holding the regulation inapplicable where worker fell three to four feet from rafter to the floor); *DeLong v. State St. Assocs.,* 211 A.D.2d 891 (3d Dep't 1995) (holding that four to five feet foot fall down slope of hill was was not an 'opening')). The hole in the Q-deck floor through which plaintiff fell was apparently about thirteen feet above the concrete floor upon which he landed. Sparling Aff., Ex. AA; Wojcik Aff., p. 70 *in* Sparling Aff., Ex. C. For the purposes of defendants' motion, then, I hold that the hole through which plaintiff fell constitutes the type of "hazardous opening" contemplated by § 1.7(b)(1)(i).

Defendants argue, without citing any cases, that because the plaintiff created the hole he subsequently fell through, it would have been "impossible to have placed any protective material around the opening," and hence §1.7(b)(1)(i) cannot apply. Defendants' Memorandum, p. 15. But there is no basis for defendants' conclusion that solely because plaintiff created the hole, defendants are absolved as a matter of law from the responsibility of adhering to the mandates of § 1.7(b)(1)(i), particularly where it appears to be undisputed that defendants directed plaintiff to

create the hole for the purpose of lowering elevator motors through it, in furtherance of the project. Whether defendants were required to install protective material around that opening pursuant to § 1.7(b)(1)(i), whether they violated that regulation, and whether and to what degree plaintiff's own negligence contributed to his injury, are disputed issues of material fact which should be resolved after each party has had a full opportunity to present its evidence. In these circumstances, I deny defendants' motion for summary judgment on plaintiff's Labor Law § 241(6) claim.

## D. Plaintiff's Labor Law § 200 and Common Law Negligence Claims

Labor Law § 200 codifies landowners' and general contractors' common law duty to maintain a safe workplace.[11] *Ross*, 81 N.Y.2d at 505. The law provides in pertinent part:

> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.

N.Y. Labor Law § 200(1) (McKinney's 2002).

Unlike claims arising under § 240(1) and § 241(6), however, Labor Law § 200 requires plaintiff to prove that defendant "exercised some supervisory control over the operation." *Ross*, 81 N.Y.2d at 505. This rule is consistent with the common law principle that "an owner or

---

[15] Because § 200 is a codification of the common law of negligence, courts generally analyze claims brought under both § 200 and the common law simultaneously. *Palen v. ITW Mortgage Investments III, Inc.*, 2003 WL 1907980, at*5-6 (S.D.N.Y. Apr. 17, 2003); *see, e.g., Vaneer v. 993 Intervale Ave. Housing Development Fund Corp.*, 5 A.D.3d 161, 162-63 (1st Dep't 2003); *Sheehan v. Gong*, 2 A.D.3d 166, 169-70 (1st Dep't 2003); *Riley v. John W. Stickl Const. Co., Inc.*, 242 A.D.2d 936, 936-37 (4th Dep't 1997); but c.f. *Mannino v. Seasons Affiliates*, 249 A.D.2d 34, 35 (1st Dep't 1998) (holding that where common law negligence claim was grounded in negligent hiring or supervision, independent analysis of the two claims is proper). In the case at bar, the facts and theories of liability proffered by plaintiff support simultaneous analysis of both his § 200 claim and common law negligence claim. For simplicity's sake I will refer to § 200 and common law negligence, collectively, as "§ 200."

general contractor could not be held responsible for the negligent acts of others over whom he had no direction or control." *Allen v. Cloutier Const. Corp*., 44 N.Y.2d 290, 299 (1978).

The prerequisite that the owner or general contractor must possess some meaningful supervisory control over the operation which led to plaintiff's injury is not a mere technicality. In fact, owners and general contractors can maintain a significant presence at a worksite without incurring § 200 liability. "[A]n owner or general contractor's retention of general supervisory control, presence at the worksite or authority to enforce general safety standards is insufficient to establish the necessary control" for a § 200 claim. *Soshinsky v. Cornell University*, 268 A.D.2d 947, 947 (3rd Dep't 2000); *see also Poulin v. E.I. Dupont DeNemours and Co*., 883 F.Supp. 894, 899 (W.D.N.Y. 1994) ("[A]n owner or employer does not supervise or control the performance of the work for the purposes of Labor Law § 200 merely by presenting ideas and suggestions, making observations and inquiries, and inspecting the work.") (internal quotations omitted); *Comes v. New York State Elec. and Gas Corp.*, 82 N.Y.2d 876, 877 (1993) (upholding dismissal of § 200 claim despite the presence of defendant's inspector at job site, because "there [wa]s no evidence that defendant exercised supervisory control or had any input into how the steel beam [that caused plaintiff's injury] was moved"); *Cooper v. Sonwil Distribution Center, Inc*., 15 A.D.3d 878, 879 (4th Dep't 2005) ("The daily presence of defendant's construction manager at the work site to check on the progress of the work does not constitute the control or supervision necessary to establish liability under section 200 or for common-law negligence.") (internal quotations omitted).

The *sine qua non* of a § 200 action against an owner or general contractor is that the defendant maintained supervisory control over the method employed by the subcontractor in accomplishing a specific task, operation or activity. *See Palen v. ITW Mortgage Investments III,*

*Inc.*, 2003 WL 1907980, at \*5-6  (S.D.N.Y. Apr. 17, 2003) ("Where a claim under section 200 'arises out of alleged defects or dangers arising from a *subcontractor's methods* or materials, recovery against the owner or general contractor cannot be had unless it is shown that the party to be charged exercised some supervisory control over *the operation*.') (citing *Bailey v. Bethlehem Steel Corp.,* 1994 WL 586944, at \*7 (W.D.N.Y. Oct. 4, 1994) (emphasis added)); *Sainato v. City of Albany*, 285 A.D.2d 708, 709 (3rd Dep't 2001) (granting summary judgment to defendant because "it did not exercise any direct control over the contractor's employees or *manner* in which the work was performed") (emphasis added); *Riley v. John W. Stickl Const. Co., Inc*., 242 A.D.2d 936, 937 (4th Dep't 1997) (granting summary judgment to defendant landowner because "the defect or dangerous condition [wa]s created by the contractor's own *methods* of work") (emphasis added); *Merkle v. Weibrecht*, 234 A.D.2d 696, 698 (3rd Dep't 1996) ("[B]ecause the dangerous condition that existed was a result of the *manner* in which plaintiff elected to gain entrance to the lift station, liability cannot be imposed absent a showing, not made here, that defendants or their employees supervised or controlled *that aspect* of his work") (emphasis added); *Persichilli v. Triborough Bridge and Tunnel Authority*, 16 N.Y.2d 136, 145 (1965) ("[T]he duty to provide a safe place to work is not breached when the injury arises out of a defect *in the subcontractor's own . . . methods*, or through negligent acts of the subcontractor *occurring as a detail of the work*.") (emphasis added).  If an owner or general contactor does not exercise supervisory control over the means or methods employed by the subcontractor to accomplish a task, it will not incur liability pursuant to § 200.

Finally, neither an owner nor a general contractor has a duty to protect workers from open and obvious hazards. *Shandraw v. Tops Markets, Inc*., 244 A.D.2d 997, 998 (4th Dep't 1997) ("[A] party potentially liable under Labor Law § 200 or for common-law negligence 'has

no duty to protect workers against a condition that may be readily observed.'") (internal

quotations omitted); *Merkle*, 234 A.D.2d at 698 ("The duty to protect prescribed by section 200

does not extend to hazards, such as that at issue here, that are readily apparent, taking into

consideration the age, intelligence and experience of the worker.").

Defendants claim that they are entitled to summary judgment on plaintiff's § 200 claim

for three reasons: (i) defendants did not supervise or control plaintiff's work; (ii) defendants did

not have specific notice of the alleged unsafe condition;[11] and (iii) because the condition was

open and obvious. Defendants' Memorandum of Law, p. 19. Because I find no genuine issue of

fact exists as to whether either defendant supervised plaintiff's work, I grant defendants' motion

as to plaintiff's Labor Law § 200 and common law negligence claims.

1. Defendant/Owner 42nd Street Development Project, Inc.

Although neither party apparently sees fit to distinguish between plaintiff's § 200

claims against the two defendants, for obvious reasons independent analysis for each is

warranted. "It is settled law that where the alleged defect or dangerous condition arises from the

---

[16] Some lower courts have suggested that § 200 liability may be premised solely on a landowner or general contractor's notice or knowledge of an unsafe condition. ***Nagel v. Metzger***, 103 A.D.2d 1 (4th Dep't 1984); *see also Giambalvo v. National R.R. Passenger Corp.*, 850 F.Supp. 166, 172 (E.D.N.Y.,1994) ("Liability under § 200 does not attach unless the owner or general contractor (1) exercised some degree of control or supervision of the work site; *or* (2) had actual or constructive notice of the condition that led to the injury. (emphasis added) (internal citations omitted); *Cole v. Rappazzo Elec. Co. Inc.*, 267 A.D.2d 735, 736, (3rd Dep't 1999) (creating liability when the owner or contractor supervised the activity "*or* had actual or constructive notice of the condition which caused the accident") (emphasis added). But this is not the law in New York. "[T]his Court has not adopted the reasoning of *Nagel* and imposed liability under the statute solely because the owner had notice of the allegedly unsafe manner in which the work was performed." *Comes*, 82 N.Y.2d at 878. *See also Wilson v. City of New York*, 89 F.3d 32, 38 (2d Cir. 1996) ("An owner is not liable under § 200 unless it had actual or constructive notice of the condition complained of *and* exercised supervision or control over the work performed by the plaintiff.") (internal quotations and citations omitted) (emphasis added); *Boyette v. Algonquin Gas Transmission Co.*, 952 F.Supp. 192, 195 -198 (S.D.N.Y. 1997) (holding that knowledge of an unsafe condition, without proof of supervisory control, is an insufficient basis for under §200). Because I find that there is no genuine issue of material fact as to whether either defendant exercised supervisory control over plaintiff, I need not address the secondary question of whether the defendants had notice of the unsafe condition.

contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner . . . under section 200 of the Labor Law." *Lombardi v. Stout*, 80 N.Y.2d 290, 295 (1992); *Yong Ju Kim v. Herbert Constr. Co.,* 275 A.D.2d 709, 712 (2nd Dep't 2000).[11]  Plaintiff has not proffered a single piece of evidence to show that the landowner, 42nd St. Development, had any supervisory control over plaintiff's work.  In fact, neither his Affidavit in Opposition – which I have treated as "additional material facts as to which it is contended that there exists a genuine fact to be tried," pursuant to Local Civil Rule 56.1(b) – nor his papers in opposition to defendants' summary judgment motion even mention 42nd St. Development's role at the project site.  *See, e.g.,* Plaintiff's Memorandum of Law in Opposition, p. 20 (containing the section challenging defendants' motion for summary judgment on plaintiff's § 200 and negligence claim entitled: "There Are Clearly Issues of Fact that Require a Trial as to *Turner Construction's* Negligence Under Labor Law § 200") (emphasis added).

        Even drawing all reasonable inferences in plaintiff's favor, there is no genuine issue of material fact that defendant 42nd St. Development did not supervise plaintiff's work and hence cannot be liable under § 200 and the common law.  42nd St. Development's motion for summary judgment as to these claims is granted.

---

[17] Except in "exceptional cases," *Comes v. New York State Electric and Gas Corp.,* 189 A.D.2d 945 (3d Dep't 1993), aff'd 82 N.Y.2d 876, where the landowner actually directly supervised the contractor or subcontractor's methods of accomplishing the work, landowners are usually only found to be liable under § 200 on a theory of negligent hiring or supervision.  *Palen*, 2003 WL 1907980 at *5; *see supra* n.15; *see, e.g., Shaheen v. I.B.M.,* 157 A.D.2d 429 (3rd Dep't 1990) (holding that where an owner had a "ubiquitous presence" and was "extensively" involved, it may be liable under § 200).  This is not plaintiff's theory, and, even if it were, he fails to offer a scintilla of evidence to support it.

## 2. Defendant/General Contractor Turner Construction Co.

Plaintiff makes a variety of assertions regarding defendant Turner's responsibilities at the project site, which he contends are sufficient to demonstrate that Turner supervised the plaintiff's work such that it should be liable under § 200 and common law negligence. I disagree. Even drawing all reasonable inferences in plaintiff's favor, there is no genuine issue of material fact: Turner, as the general contractor, did not exercise meaningful supervisory control over the activity which led to plaintiff's injury.

According to plaintiff, a Turner employee informed a Canron supervisor, Steve Dawson, that he wanted the Q-deck flooring removed in order to create a hole through which the elevator motors could be lowered.[11] *Id.* at ¶¶ 7, 29. The morning of the accident, Dawson informed plaintiff's foreman, Michael O'Donnell, another Canron employee, that O'Donnell should move his crew to remove the Q-deck. Sacks Aff., ¶ 7. O'Donnell then gave plaintiff the instructions to remove the Q-deck flooring and directed the method to be used by plaintiff. Defendants' 56.1 Statement, ¶ 43; Plaintiff's Aff., ¶ 3 ("Michael O'Donnell came down to the work areas and instructed us to remove corrugated decking . . . . We were instructed by our foreman [O'Donnell] to cut out and burn out tack welds in order to remove the deck."). "As foreman, Michael O'Donnell gave all instructions and was plaintiff's sole supervisor at the time of the accident." Sacks Aff., ¶ 5; Plaintiff's Aff., ¶ 3 ("Michael O'Donnell was my sole supervisor at the time of the accident and the individual who gave me my instructions on a daily

---

[18] Plaintiff's reliance on the fact that the task initially originated with the general contractor is woefully misplaced. If task-origination, in and of itself, was sufficient to bestow liability on a general contractor, general contractors would *a priori* be liable under § 200 for any injury sustained by an employee of any of its subcontractors. It is not who ordered the task, but who directed and supervised the manner or methods employed to complete the task that is relevant for the purposes of § 200.

basis."). Plaintiff also asserts that he "requested that a scaffold be set up underneath the opening. This request was denied by his foreman [O'Donnell]." Sacks Aff., ¶ 5.

Plaintiff also makes general assertions concerning Turner's role at the project site. Plaintiff states that Turner "retained the subcontractors . . . and coordinated the work." Sacks Aff., ¶ 29. Plaintiff continues that "[d]espite the fact that Turner had site safety superintendents walking the site on a daily basis, they failed to erect any protection around the opening in question." *Id.* Plaintiff also contends that "Turner held a safety meeting . . . stating it was [sic] *mandatory to provide* personal protective equipment for fall protection to all workers" and required that the safety cable be ½ inch. *Id.* at 31.[11] Plaintiff concludes that Turner's negligence in its "overall supervision of the job site" provides a proper foundation for liability under § 200. These assertions are insufficient on their face to preclude summary judgment.

In addition, the uncontroverted[22] allegations contained in defendants' Rule 56.1 Statement make plain that Turner did not meaningfully supervise the plaintiff. It was Canron and the Local 40 Ironworkers' Union that provided instruction in the proper use of PFAS. Defendants' Rule 56.1 Statement ¶¶ 10, 14. Canron actually provided the PFAS to its ironworkers. *Id.* at ¶ 17. When plaintiff did have access to a PFAS, it was contained in

---

[19] Ironically, though it is plaintiff who claims that this meeting demonstrates Turner's supervision over plaintiff's work, the minutes of the meeting, attached to plaintiff's motion papers actually demonstrate otherwise. The meeting minutes for this safety meeting between Turner *and its subcontractors*, contain the following entry: "*Canron* to provide perimeter tie off points for connectors. A minimum of three wire rope clips needs [sic] to be installed on ½" (top) safety cable." Sacks Aff., Ex. K. In other words, the meeting further demonstrates that it was Canron, *not* Turner which was responsible for the details of plaintiff's work, and for the protection provided to him.

[20] Because the facts underlying defendants' assertions are properly supported in the record and because the assertions are not expressly contradicted by the Sacks Affidavit, they are deemed admitted by plaintiff. Local Civil Rule 56.1(c). See the discussion in Part I, *supra*.

Canron's gang boxes.[22]  Reminders that that use of a PFAS was mandatory when working at heights were made during weekly safety meetings conducted by Canron's ironworker steward. *Id.* at ¶¶ 24-29.  Moreover, and more importantly, as I observed above, it was a Canron employee, Dawson, who instructed plaintiff's foreman, O'Donnell, another Canron employee, to remove the Q-deck and it was O'Donnell, exclusively, who instructed plaintiff which decking should be removed, how much decking shouled be removed, and how to remove the decking.  *Id.* at ¶ 49; *see also* ¶¶ 43-44, 46; Saks Aff., Ex. C., pp. 65-68.[21]

In sum, there is no evidence that Turner exercised supervisory control or had any input into how plaintiff removed the Q-deck flooring, the activity that caused plaintiff's injury. Based upon the foregoing, even resolving all ambiguities and drawing all reasonable inferences against Turner, there is no genuine issue of material fact and Turner's motion for summary judgment on plaintiff's Labor Law § 200 and common law negligence claims is granted.

## IV. Conclusion

In these circumstances, and based upon the foregoing:

1. Defendants' motion for summary judgment on plaintiff's New York Labor Law § 241(6) claim is denied.

2. Defendants' motion for summary judgment on plaintiff's New York Labor Law § 240(1) claim is denied.

---

[21] Though the question of whether a PFAS was actually available to plaintiff on the morning of the accident is in dispute, plaintiff does not dispute that when he was provided with a PFAS, it came from the Canron gang box. Plaintiff's Aff., pp. 55-56 *in* Sparling Aff., Ex. C.

[22] To the extent that plaintiff rests his claims on the lighting and puddles which he alleges were present on the Q-deck flooring on the morning of the accident, plaintiff admits that those conditions were open, obvious, and known to him. Wojcik Aff., p.2 *in* Sacks Aff., Ex. A ("Q [Sparling].  Did you inspect the work area before you began performing this work? A [Wojcik].  Yes., we looked around."  Q.  What did you see?  A. . . . It wasn't well lighted [sic], wet, puddles, it had rained the night before.  That was it.").  "The duty to protect prescribed by section 200 does not extend to hazards, such as that at issue here, that are readily apparent, taking into consideration the age, intelligence and experience of the worker."  *Merkle*, 234 A.D.2d at 698; (upholding lower court's grant of summary judgment because, *inter alia*, "to the extent that any dangerous condition existed, it was readily observable.") *Soshinsky*, 268 A.D.2d at 948.

2. Defendants' motion for summary judgment on plaintiff's New York Labor Law § 240(1) claim is denied.

3. Defendants' motion for summary judgment on plaintiff's New York Labor Law § 200 and common law negligence claims are granted.

In the light of these rulings, counsel for the parties are directed to send letters to the Court, with copies to each other, not later than September 19, 2005, advising (1) whether any further pretrial discovery is required; (2) if so, the nature and extent of that discovery; and (3) if the case is now trial ready, the estimated time each party will require for the presentation of its case in chief. In the latter eventuality, the Court will then enter its final pretrial order and schedule the case for trial.

It is SO ORDERED.

Dated: New York, New York
       August 26, 2005

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

24